**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, a Political Subdivision of the State of California, 21865 Copley Drive Diamond Bar, CA 91765 | ) Civ. No. ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| STEPHEN L. JOHNSON, Administrator, United States Environmental Protection Agency and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, United States Environmental Protection Agency Ariel Rios Building 1200 Pennsylvania Avenue, N.W. Washington, D.C. 20460 | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.**

**PRELIMINARY STATEMENT**

1.      This action is brought pursuant to the federal Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* (the "CAA") and the federal Administrative Procedure Act, 5 USC §§ 701 *et seq.* (the "APA"), and requests the Court to order the Defendants, Stephen L. Johnson, Administrator of the Environmental Protection Agency ("Administrator") and the United States Environmental Protection Agency ("EPA"), to comply with a nondiscretionary duty under the CAA.

2.      Section 213 of the CAA (42 U.S.C. § 7547) requires the Administrator of EPA to promulgate regulations requiring the "greatest degree of emission reduction achievable" for marine vessels. These regulations were required to be adopted by November, 1992. (CAA § 213(a)(3); 42 U.S.C. § 7547(a)(3).) EPA did not adopt any regulations for so-called Category 3 marine engines used on ocean-going vessels (Marine Compression-Ignition Engines at or Above 30 Liters per Cylinder) until 2003. Even then the rules EPA adopted did not require any emission

1

1   reductions beyond those already required by international standards, which EPA acknowledged

2   were already being met by manufacturers. Nor did EPA's rules apply to foreign-flagged vessels,

3   which contribute by far the greatest amount of emissions from large ocean-going vessels in the

4   Southern California area.

5          3.     In adopting the 2003 rules EPA also established through a properly promulgated

6   regulation a further deadline of April 27, 2007 in which the agency would adopt a second phase

7   of rules for Category 3 marine engines. In pertinent part, 40 C.F.R. § 94.8(a)(2)(ii) reads: "EPA

8   has not finalized Tier 2 standards for Category 3 engines. EPA will promulgate final Tier 2

9   standards for Category 3 engines on or before April 27, 2007." In this regulation, EPA

10  committed to incorporate advanced air pollution control technologies into stricter emissions

11  standards and committed to consider whether to make those rules apply to foreign-flagged

12  vessels.

13         4.     The statutory and regulatory time for EPA to promulgate Tier 2 rules for Category

14  3 marine engines has passed, and EPA has neither promulgated nor even proposed such rules and

15  EPA is now in violation of its nondiscretionary duties under § 213 as well as its regulatory duty

16  under 40 C.F.R. § 94.8(a)(2)(ii).

17         5.     By this complaint, Plaintiff South Coast Air Quality Management District (the

18  "District") seeks a permanent injunction requiring the Administrator and EPA to promulgate Tier

19  2 regulations for Category 3 marine engines that will require the greatest degree of emission

20  reduction achievable as quickly as possible.

21                                           II.

22                                      **JURISDICTION**

23         6.     This is an action arising under the Clean Air Act, 42 U.S.C. § 7401 *et seq*. This

24  court has original jurisdiction over the action pursuant to CAA § 304(a)(2) (42 U.S.C.

25  § 7604(a)(2), which provides that "any person may commence a civil action on his own

26  behalf…(2) against the Administrator where there is alleged a failure of the Administrator to

27  perform any act or duty under this chapter which is not discretionary with the Administrator…."

28  Section 304(a) further provides: "The district courts shall have jurisdiction, without regard to the

1  amount in controversy or the citizenship of the parties,…to order the Administrator to perform

2  such act or duty…." (42 U.S.C. § 7604(a).)  This Court also has jurisdiction over this action

3  under 28 U.S.C. § 1331 (action arising under the laws of the United States).

4         7.      Section 304 (b)(2) of the Clean Air Act (42 U.S.C. § 7604(b)(2)) requires that

5  written notice of intent to bring suit under Section 304 must be provided to the Administrator of

6  EPA 60 days prior to commencement of such an action.  On July 11, 2007, plaintiff notified the

7  Administrator by certified mail of plaintiff's intent to sue EPA pursuant to Section 304(a)(2) of

8  the Act.  A copy of this written notice is attached hereto as Exhibit 1.  The Notice was received

9  by the Administrator on July 16, 2007.  Thus, the 60-day notice period expired on September 14,

10  2007.

11  **III.**

12  **VENUE**

13         8.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e) because the

14  Defendants have their principal offices here and because a substantial part of the events or

15  omissions giving rise to the claims occurred in this district.

16  **IV.**

17  **THE PARTIES**

18         9.      Plaintiff South Coast Air Quality Management District is a political subdivision of

19  the State of California and is an air quality management district organized and existing pursuant

20  to Sections 40400 *et seq*. of the California Health and Safety Code. The District includes the

21  South Coast Air Basin, which includes the non-desert portions of Los Angeles, Riverside, and

22  San Bernardino Counties, and all of Orange County. (Cal. Health &  Safety Code § 40410; Cal.

23  Code Regs. Tit. 17, § 60104.)  The District also has jurisdiction over portions of the Mojave

24  Desert Air Basin and the Salton Sea Air Basin, including the Palm Springs area. The South Coast

25  Air Basin (Basin) has been designated by EPA as nonattainment for the NAAQS for the 8-hour

26  ozone standard and for the annual PM2.5 standard. The Basin has the worst air quality in the

27  nation for both these pollutants. The District is the agency primarily responsible under state law

28  for attaining the NAAQS (Cal. Health & Safety Code § 40001) and is the "sole and exclusive

1  local agency within the South Coast Air Basin with responsibility for comprehensive air

2  pollution control, and it shall have the duty to represent the citizens of the basin in influencing

3  the decisions of other public and private agencies whose actions might have an adverse impact on

4  air quality in the basin." (Cal. Health & Safety Code § 40412.) The District is vitally interested

5  in the regulations at issue in this case because the District has calculated that it cannot achieve

6  the NAAQS for ozone and PM2.5 by the dates required by statute without further reductions of

7  SOx, PM2.5, and NOx from ocean-going vessels, including the Category 3 engines involved in

8  this case.

9      10.    The District is primarily responsible for developing and implementing the state

10  implementation plan for the areas within its jurisdiction (Cal. Health & Safety Code § 40460) as

11  is required by the Clean Air Act section 110 (42 U.S.C. § 7410). If EPA does not regulate

12  Category 3 marine vessels, the District will have to find other ways to reduce emissions

13  sufficiently to attain the National Ambient Air Quality Standards (NAAQs), and the District's

14  tack in developing an adequate State implementation plan will be more difficult and onerous.

15  The District therefore has standing to sue in this case. (*National Association of Clean Air*

16  *Agencies v. Environmental Protection Agency*, 439 F. 3d 1221 (D.C. Cir. 2007).)

17      11.    Defendant Stephen L. Johnson is the duly appointed and acting Administrator of

18  the United States Environmental Protection Agency, and is subject to a nondiscretionary duty

19  pursuant to 40 C.F.R. § 94.8 (a)(2)(ii) and CAA § 213(a)(3), (42 U.S.C. § 7547(a)(3)) to

20  promulgate regulations requiring the greatest degree of emissions reductions achievable for

21  Category 3 marine vessels by April 27, 2007. The date for promulgation has passed and

22  Defendant Johnson has neither promulgated nor proposed such regulations. Indeed, Defendant

23  Johnson has proposed to further delay such regulations until December, 2009. Defendant

24  Johnson is sued herein in his official capacity as Administrator of EPA.

25      12.    Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

26  ("EPA") is a federal agency charged by the Clean Air Act with certain nondiscretionary duties,

27  and is required by section 213(a) of the Act, 42 U.S.C. § 7547(a), as well as 40 C.F.R.

28  ///

4

1  § 94.8(a)(2)(ii), to promulgate regulations setting standards applicable to emissions from nonroad

2  vehicles and engines, including Category 3 marine vessel engines.

3                                        V.

4                    FACTUAL AND LEGAL BACKGROUND

5        13.    Pollution from ocean-going vessels contributes substantially to air quality

6  problems in the Los Angeles region and elsewhere in the United States.  Marine vessels emit

7  more nitrogen oxides, a precursor of both ozone and PM2.5, than the over 300 largest stationary

8  sources in the District.  Marine vessels are the largest single source of sulfur oxides in the region,

9  contributing about 50% of such emissions in the year 2005.  Based on the District's air quality

10  modeling, it will be impossible to attain federal annual NAAQS for PM2.5 by the statutory

11  deadline of 2014 unless ship emissions are substantially controlled. Additional controls for

12  Category 3 engines are both feasible and demonstrated.

13        14.    CAA § 213(a)(1) requires EPA to conduct a study of emissions from nonroad

14  engines and nonroad vehicles, including marine vessels, to determine if such emissions cause, or

15  significantly contribute to, air pollution which may reasonably be anticipated to endanger public

16  health or welfare.  Such study shall be completed by November, 1991. (42 U.S.C. § 7547(a)(1).)

17  The Administrator completed such study in 1991.

18        15.    CAA § 213 (a)(2) requires EPA to determine by November, 1992 whether

19  emissions of carbon monoxide, oxides of nitrogen, and volatile organic compounds from new

20  and existing nonroad engines or nonroad vehicles are significant contributors to ozone or carbon

21  monoxide concentrations in more than one area which has failed to attain the NAAQS for ozone

22  or carbon monoxide.  (42 U.S.C. § 7547(a)(2).)  The Administrator made such a significance

23  finding in 1994.  (59 Fed. Reg. 31306, 31307 (June 17, 1994).)

24        16.    The Clean Air Act requires EPA to regulate nonroad engines for which a

25  significance finding has been made, and such rules are to be promulgated no later than November

26  15, 1992.  (CAA § 213(a)(3); 42 U.S.C. § 7547(a)(3).)  EPA did not promulgate rules for marine

27  vessels until December 1999, and even then excluded Category 3 engines and all engines on

28  foreign-flagged vessels.  (64 Fed. Reg. 73300 (Dec. 29, 1999).)  EPA was sued by Bluewater

1  Network and settled the case by agreeing to publish, by January 31, 2003, a rule under

2  § 213(a)(3) containing NOx emission standards for new Category 3 marine diesel engines, and to

3  consider whether Category 3 engines on foreign-flagged vessels should also be subject to such

4  emission standards while in U.S. waters.

5        17.    On February 28, 2003, the Administrator issued a final rule for "Category 3"

6  marine vessel engines (New Marine Compression-Ignition Engines at or Above 30 Liters per

7  Cylinder). (68 Fed. Reg. 9746 (February 28, 2003).) The rules for Category 3 engines did not

8  require advanced technologies, did not require any emission reductions beyond the IMO

9  MARPOL Annex VI standards which manufacturers were already meeting, and did not set any

10 standards for foreign-flagged vessels. As part of that rulemaking, EPA stated that it would adopt

11 "Tier 2" standards for Category 3 engines by April 27, 2007, which would consider both

12 requiring advanced technologies such as selective catalytic reduction, and regulating foreign

13 flagged vessels. In fact, EPA adopted a rule committing itself to adopt such "Tier 2" standards

14 by April 27, 2007, as set forth in 40 C.F.R. § 94.8(a)(2)(ii).

15       18.    EPA was sued for failing to regulate Category 3 engines to the extent required by

16 statute, and for failure to regulate foreign-flagged vessels. (*Bluewater Network v. EPA*, 372

17 F.3d. 404 (D.C. 2004).) Plaintiff District joined as *amicus curiae* supporting the Petitioner in

18 that case. The Court of Appeals held that EPA's "two-tiered" approach reasonably implemented

19 the requirements of Section 213. However, the Court upheld EPA's approach only because EPA

20 had committed to adopt Tier 2 controls by April 27, 2007. The Court stated: "Finally, and

21 perhaps most importantly, the EPA has committed to incorporating the new technologies into

22 stricter emission standards in the 2007 rulemaking." (*Bluewater Network*, 372 F. 3d at 412.) The

23 Court also concluded, based on EPA's commitment to address this issue in rulemaking by April

24 27, 2007, that the challenge to EPA's deferral of the issue of whether to regulate foreign flagged

25 vessels was "premature." (*Bluewater Network*, 372 F. 3d at 413.)

26       19.    The April 27, 2007 deadline has passed without EPA proposing, let alone

27 adopting any new rules for Category 3 engines.

28 ////

6

## VI.

### FIRST CLAIM FOR RELIEF

[For Declaratory and Injunctive Relief Based on A Nondiscretionary
Duty to Promulgate Tier 2 Regulations for Category 3 Marine Vessel
Engines By April 27, 2007 Pursuant to 40 C.F.R. § 94.8(a)(2)(ii) and
CAA § 304(a)(2); (42 U.S.C. § 7604(a)(2))]

20.     Plaintiff realleges and incorporates here by reference the allegations of Paragraphs 1 through 19 of this Complaint.

21.     On February 28, 2003, EPA adopted 40 C.F.R. § 98.4 (a)(2)(ii) which provides: "EPA has not finalized Tier 2 standards for Category 3 engines. EPA will promulgate Tier 2 standards for Category 3 engines on or before April 27, 2007." The time for such promulgation has passed, and the Administrator has neither promulgated nor proposed such standards. Indeed, EPA has proposed to further delay such rulemaking until December, 2009. (72 Fed. Reg. 20977 (April 27, 2007).)

22.     A regulatory deadline EPA establishes for itself to complete a rulemaking is an enforceable commitment and constitutes a duty of the Administrator under the CAA that is not discretionary, and is independently enforceable pursuant to CAA § 304(a)(2), (42 U.S.C. § 7604(a)(2)).

23.     Based on the foregoing, plaintiff South Coast Air Quality Management District is entitled to a judgment ordering Defendant Johnson to promulgate Tier 2 regulations for Category 3 marine engines, incorporating advanced technologies and stricter emission standards, including regulation of foreign-flagged vessels, by the earliest date possible.

## VII.

### SECOND CLAIM FOR RELIEF

[For Declaratory and Injunctive Relief Based on Failure to Perform a
Nondiscretionary Duty to Adopt Regulations Requiring the Greatest Degree of
Emission Reduction Achievable for Category 3 Marine Vessel Engines
After Making A Determination of Significance Pursuant to
CAA § 213(a)(2), (42 U.S.C. § 7547 (a)(2)]

24.     Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 23 of this Complaint.

25.    Once EPA made the determination of significance pursuant to CAA § 213(a)(2), (42 U.S.C. § 7547(a)(2)) in 1994, the Administrator became subject to a statutory duty that is not discretionary with the Administrator to promulgate by November 1992 regulations for Category 3 marine engines that required the greatest degree of emission reduction achievable for such engines, pursuant to CAA § 213(a)(3), (42 U.S.C. § 7547(a)(3)).  This nondiscretionary duty arises out of statute, Section 213(a)(3), (42 U.S.C. § 7547(a)(3)), and is separate and apart from the Administrator's duty arising out of EPA's regulation, and is a duty that exists whether or not EPA ultimately amends its regulation requiring promulgation of Tier 2 rules by April 27, 2007.

26.    EPA has still not fulfilled its nondiscretionary duty to regulate Category 3 marine engines and require the greatest degrees of emission reduction achievable, and has failed to regulate foreign-flagged vessels at all, all of which it was required to do by November 15, 1992. EPA is now nearly 17 years past its statutory duty to regulate these engines.  In addition, based on the Court's decision in *Bluewater Network*, 372 F.3d at 412, EPA is under a duty that is not discretionary pursuant to Clean Air Act § 213 to adopt further regulations for Category 3 vessels by April 27, 2007. EPA has not yet promulgated nor proposed such rules although this deadline has passed.

27.    Based on the foregoing, plaintiff South Coast Air Quality Management District is entitled to a judgment ordering the Administrator and EPA to promulgate Tier 2 regulations for Category 3 marine engines, incorporating advanced technologies and stricter emission standards, including regulation of foreign flagged vessels, by the earliest date possible.

## VIII.

### THIRD CLAIM FOR RELIEF

[Violation of the Administrative Procedure Act]

28.    Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 27 of this Complaint.

29.    Defendant Administrator and Defendant EPA's failure to promulgate regulations containing emissions standards applicable to Category 3 marine diesel engines as required by

///

1    section 213(a) of the Clean Air Act is a nondiscretionary agency action unlawfully withheld in

2    violation of 5 U.S.C. § 706(1).

3    　　　　30.    Defendant Administrator and Defendant EPA's continuing failure to promulgate

4    such regulations is arbitrary, capricious, an abuse of discretion, and not in accordance with the

5    law, contrary to the APA.

6    　　　　　　　　　　　　　　**PRAYER FOR RELIEF**

7    　　　　WHEREFORE, Plaintiff South Coast Air Quality Management District prays for relief as

8    follows:

9    　　　　A.    For a declaration that EPA and Administrator Johnson are in violation of their

10   nondiscretionary duty, pursuant to section 213(a)(3) of the Act, 42 U.S.C. § 7547(a)(3), and

11   pursuant to 40 C.F.R. § 94.8 (a)(2)(11), for failure to promulgate regulations containing

12   standards applicable to emissions from new Category 3 marine diesel engines, including engines

13   on foreign-flagged vessels that enter United States ports, by April 27, 2007.

14   　　　　B.    For a declaration that EPA and Administrator Johnson are in violation of their

15   nondiscretionary duty, pursuant to Section 213(a)(3) of the Act, 42 U.S.C. § 7547 (a)(3), for

16   failure to promulgate regulations containing standards applicable to emissions from new

17   Category 3 marine diesel engines, including engines on foreign-flagged vessels that enter United

18   States ports, by November 15, 1992.

19   　　　　C.    For a judgment enjoining EPA and Administrator Johnson from further delaying

20   compliance with its nondiscretionary duties as set forth herein, and ordering Defendant Johnson

21   to promulgate Tier 2 regulations for Category 3 marine engines, incorporating advanced

22   technologies and stricter emission standards, including regulation of foreign flagged vessels, at

23   the earliest date possible;

24   ///

25   ///

26   ///

27   ///

28   ///

1    D.    For costs and attorneys' fees pursuant to law, including CAA § 304(d), (42 U.S.C.

2  § 7604(d); and

3    E.    For such other, further or different relief as this Court may deem just and proper.

4

5                                              Respectfully Submitted,

6

7  Dated:  September  28, 2007

8                                              Eugene R. Fidell (112003)
                                               Kathy S. Ghiladi (435484)
9                                              Feldesman Tucker Leifer Fidell LLP
                                               2001 L Street NW, 2nd Floor
10                                             Washington D.C. 20036
                                               Tel: (202) 466-8960
11                                             Fax: (202) 293-8103

12

13  DATED: September  28, 2007

14                                             Kurt R. Wiese
                                               District Counsel, *Pro Hac Vice Applicant*
                                               Barbara Baird, *Pro Hac Vice Applicant*
15                                             Michael Harris, *Pro Hac Vice Applicant*
                                               DISTRICT COUNSEL
16                                             SOUTH COAST AIR QUALITY
                                                 MANAGEMENT DISTRICT
17                                             21865 Copley Drive
                                               Diamond Bar, CA  91765-0940
18                                             Tel: (909) 396-3535
                                               Fax:  (909) 396-2961
19                                             Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

                                               10



**South Coast
Air Quality Management District**

21865 Copley Drive, Diamond Bar, CA 91765-4178
(909) 396-2000 · www.aqmd.gov

*Office of the Executive Officer
Barry R. Wallerstein, D.Env.*
909.396.2100, fax 909.396.3340

May 29, 2007

U.S. Environmental Protection Agency
Air and Radiation Docket and Information Center (6102T)
1200 Pennsylvania Avenue NW
Washington, DC 20460

Docket ID No. EPA-HQ-QAR-2007-0120

Subject:     Comments on:

Direct Final Rule: Change in Deadline for Rulemaking To
Address the Control of Emissions
From New Marine Compression-
Ignition Engines at or Above 30 Liters
Per Cylinder; Docket ID No. EPA–HQ–OAR–2007–
0120

Proposed Rule: Change in Deadline for Rulemaking To
Address the Control of Emissions
From New Marine Compression-
Ignition Engines at or Above 30 Liters
per Cylinder; Docket ID No. EPA–HQ–
OAR–2007–0120

The South Coast Air Quality Management District (SCAQMD) appreciates the
opportunity to comment on EPA's direct final rule, *Change in Deadline for Rulemaking
to Address the Control of Emissions from New Marine Compression-Ignition Engines at
or Above 30 Liters per Cylinder,* and EPA's *Proposed Rule: Change in Deadline for
Rulemaking To Address the Control of Emissions From New Marine Compression-
Ignition Engines at or Above 30 Liters per Cylinder.* Given the large and growing
emissions from Category 3 marine engines, and weak existing standards, we strenuously
object to the proposed delay of this essential rulemaking. The simple fact is that the 16
million residents of the South Coast Air Basin will not breathe air that meets federal
ambient air quality standards unless Category 3 marine engines are substantially and



PLAINTIFF'S
EXHIBIT
1

U.S. Environmental Protection Agency
Docket ID No. EPA-HQ-QAR-2007-0120
May 29, 2007
Page 2

expeditiously controlled. EPA's extension of time to a date over 19 years after Congress directed EPA to regulate emissions from such non-road engines violates the Clean Air Act. It will also miss a singular opportunity to require advanced controls for the large number of marine vessels currently on order to be constructed. The SCAQMD staff provides the following specific comments regarding this delay:

### Background: Inaction and Litigation

In the 1990 Amendments to the Clean Air Act, Congress directed EPA to promulgate regulations for such categories of nonroad engines as it determined were significant contributors to ozone or carbon monoxide levels in more than one nonattainment area. (CAA §213(a)(2) & (3); 42 U.S.C.§ 7547(a)(2) & (3)). These regulations were to be adopted by November, 1992. (CAA §213(a)(3), 42 U.S.C. §7547(a)(3)). The regulations were required to achieve "the greatest degree of emission reduction achievable through the application of technology which the Administrator determines will be available..." EPA completed its study in 1991 but did not publish a significance finding until 1994, and had to be sued to initiate rulemaking, as acknowledged in 59 Fed. Reg. 55930, 55930-32 (November 9, 1994). Not until late 1999 did EPA issue a rule for large (over 37 kW) marine diesel engines, 64 Fed. Reg. 73300 (December 29, 1999). This rule did not impose any limits for Category 3 engines, either U.S. or foreign-flagged. (64 Fed. Reg. at 73306). EPA was again sued, and pursuant to an out-of-court settlement in 2000, agreed to issue a final rule for Category 3 engines by January 31, 2003. EPA issued the final rule on February 28, 2003 (68 Fed.Reg. 9746).

EPA's 2003 rule did not set any standards for foreign flagged ships—which are responsible for the vast majority of emissions from marine vessels, and for U.S. flagged ships, EPA merely codified the IMO MARPOL Annex VI standards. EPA acknowledged that "manufacturers are generally already meeting the internationally-negotiated standards." (68 Fed. Reg. at 9761). In fact, EPA had previously stated that adopting the Annex VI standards "would be unnecessary and redundant" because it expected U.S. vessels to comply with Annex VI. (63 Fed. Reg. at 68,542. (December 11, 1998). EPA stated that the rules were intended to achieve "a 20 percent reduction in the national Category 3 NOx inventory by 2030." (68 Fed. Reg. at 9757, 9762). However, it is clear that EPA's rule would not result in any additional reductions beyond what would otherwise occur under the IMO standards. EPA also stated that it intended to adopt "Tier 2" standards by April 27, 2007, in which it would consider both requiring advanced technologies such as selective catalytic reduction, and regulating foreign flagged vessels.

In 2003, Bluewater Network challenged EPA's rules, and the South Coast Air Quality Management District joined as an amicus on behalf of petitioner. Ultimately, the Court of Appeals upheld EPA's rule. *Bluewater Network v. EPA*, 372 F.3d 404 (D.C.Cir. 2004). The court accepted EPA's argument that postponing requiring advanced technologies

U.S. Environmental Protection Agency
Docket ID No. EPA-HQ-QAR-2007-0120
May 29, 2007
Page 3

until April 2007 would allow resolution of several outstanding technical issues, and would give an opportunity for international standards to be adopted. EPA also said that requiring immediate adoption of available controls beyond IMO standards might risk future reductions, if those currently available controls foreclosed later more effective controls. While the court deferred to EPA's discretion on these issues, it did so only because EPA had committed to adopt the Tier 2 controls by April 27, 2007. As the court stated, "Finally, and perhaps most importantly, the EPA has committed to incorporating the new technologies into stricter emissions standards in the 2007 rulemaking. See e.g., 68 Fed. Reg. at 9761)" *Bluewater Network*, 372 F.3d at 412. EPA also stated that it would consider whether to regulate foreign flagged vessels in the 2007 rulemaking. (68 Fed. Reg. at 9762). The court therefore concluded that EPA's "two-tiered approach" reasonably implements Section 213. (*Id.*) The court also concluded that Bluewater Network's challenge to EPA's deferral of the issue of whether to regulate foreign flagged vessels was "premature." (*Bluewater Network*, 372 F.3d at 413.).

### Proposed Delay

EPA now proposes to delay its Category 3 marine vessel regulations yet again, for an additional two and one-half years, and similarly to delay even the decision whether to regulate foreign flagged vessels. This proposal is unacceptable and legally deficient. As noted above, the Court of Appeals expressly relied on EPA's commitment to further regulation in 2007 in order to uphold EPA's existing rules. EPA has now abandoned that commitment and the foundation of the Court's decision to uphold EPA's rules has been swept away. The District staff believes that EPA is now in violation of its duties under section 213 to require the "greatest degree of emission reduction achievable" through the application of technology which "will be available." The Clean Air Act required EPA to adopt such rules by November 1992; EPA now proposes to delay requiring any reductions until after a rulemaking near the end of 2009. EPA's proposal calls for rules to be adopted 17 years later than the statute requires, and the vessels at issue are the largest under-regulated sources in the most polluted area of the nation. Moreover, EPA cannot indefinitely postpone the decision whether to regulate foreign flagged vessels; the court upheld EPA's earlier refusal to decide only because EPA promised to address the issue by April 27, 2007. Since EPA has abandoned that commitment, a challenge to EPA's failure to regulate foreign flagged vessels is no longer "premature." Extension of the April 27, 2007 deadline is a violation of EPA's obligations under the Clean Air Act.

Given the above-described history, as well as the intense public concern in Southern California regarding port pollution, it is remarkable that EPA chose to undertake this delay through a direct final rulemaking which the agency claims is "non controversial." We object to this procedure. We also note that it has been four years since the April 27, 2007 rulemaking deadline was established, yet EPA waited until just four days before that deadline to publish notice of its inability to meet it.

U.S. Environmental Protection Agency
Docket ID No. EPA-HQ-QAR-2007-0120
May 29, 2007
Page 4

### Alleged Justification for Delay

The reasons given by EPA for the current delay of the rulemaking deadline were to provide the agency more time to obtain an understanding of technical issues and to allow the EPA to work through the IMO to develop international marine emission regulations. These reasons for delay are not credible as they are much the same as those stated by EPA for not taking action in 2003. In addition, EPA has had four years since then to investigate control technologies such as those described below. The second justification—a desire to work through IMO—is particularly ironic given recent reports that the IMO subcommittee on Bulk Liquids and Gases has deferred action on recommending stricter standards until March 2008 (at the earliest) and that yet another group may be tasked with evaluating and recommending future controls. Based on this, and IMO's history of adopting extraordinarily weak standards (e.g. fuel sulfur limit of 45,000 ppm), it is clear that international standards will not be forthcoming in the timeframe needed by the United States, and there is no assurance that if such standards are adopted, they will be sufficient for the needs of the nation.

### Urgent Need for Emission Controls

*Criteria Pollutants.* Despite significant air quality improvements, the South Coast Air Basin (Basin) still has the worst air quality in the nation. The Basin is designated a non-attainment area for the National Ambient Air Quality Standards (NAAQS) for PM2.5 and ozone, with a "Severe-17" ozone classification. The federal ozone standard was exceeded on over 80 days annually during recent years, with peak ozone levels approaching double the standard. The California Air Resources Board has estimated that over 1,200 premature deaths occur *every year* in the Basin due to emissions of ozone precursors (e.g. nitrogen oxides) and particulates and their precursors (e.g. sulfur oxides) just from sources in goods movement. Total premature deaths in the Basin caused by PM2.5 are estimated at 5,400 *every year*. Many other adverse health impacts have been documented, including exacerbation of asthma, lost work days, and hospitalizations. In addition, a study by the USC School of Medicine found a greater risk of reduced lung function among children growing up in areas of the Basin with relatively high particulate levels. Researchers believe that such reduction in lung function may be permanent. It is notable that the study leading to this conclusion was conducted after much air quality progress had already occurred.

*Toxics.* A study conducted by the SCAQMD concluded that cancer risks caused by air pollution in the Basin are significant, averaging approximately 1,400 in a million. Higher risks were found along transportation corridors, and the highest risks in the region—several thousand per million—were found within and near the Ports of Long Beach and Los Angeles. Over 70% of this cancer risk is due to emissions of diesel

U.S. Environmental Protection Agency
Docket ID No. EPA-HQ-QAR-2007-0120
May 29, 2007
Page 5

particulate matter, a designated Toxic Air Contaminant in California, and a pollutant
which EPA considers a mobile source air toxic. In addition, the California Air Resources
Board recently conducted a health risk assessment of emissions from the Ports of Los
Angeles and Long Beach which found cancer risks well in excess of 500 in a million, just
from port sources. To put these numbers into perspective, SCAQMD regulatory limits on
permissible cancer risk from stationary sources are generally set at far lower levels—10
to 25 in a million.

*Contribution of Marine Vessels.* Ocean-going vessels represent a significant and
growing source of emissions in the Basin. Almost 6,000 vessel calls are made annually
to the Ports of Los Angeles and Long Beach — collectively the largest port in the nation
and among the largest in the world in terms of cargo throughput. Some 44% of all
containerized trade to the nation flows through these ports. Key air quality impacts of
this trade include the following:

- *Nitrogen Oxides.* Marine vessels emit more nitrogen oxides than all of the
  refineries, power plants and 350 other largest stationary sources in the South
  Coast Air Basin *combined.* Marine vessels are also virtually the only significant
  source category with emissions projected to *increase*, primarily due to lax
  emission controls and cargo throughput that is expected to triple by 2025.
  Emissions from almost all other source categories are projected to decrease due to
  regulatory limits. Nitrogen oxides contribute to ambient ozone and particulate
  levels.

- *Particulates.* Port-related sources emit 23 percent of regional diesel particulate
  emissions, a level which is projected to increase to 53 percent by 2023 if new
  emission controls are not applied. Marine vessels are the largest contributor to
  these emissions.

- *Sulfur Oxides.* Marine vessels are the largest single source of sulfur oxides in this
  region, contributing approximately 50% of such emissions in 2005, a number that
  is expected to rise to 57% in 2020. Sulfur oxides are major contributor to ambient
  particulates.

*Ineffective Current Standards.* Current IMO NOx emission limits will achieve
virtually no emission reductions in coming years. IMO marine fuel sulfur standards do
not constrain sulfur content that currently averages 2.7% (27,000 ppm — compared to
just 15 ppm required for onroad and other sources in the United States). Thus, no SOx or
particulate reductions are expected as a result of these IMO standards. Approval of a
sulfur emission control area under MARPOL Annex VI, setting a 15,000 ppm sulfur
content limit, would provide modest assistance, but would not be enough to achieve

U.S. Environmental Protection Agency
Docket ID No. EPA-HQ-QAR-2007-0120
May 29, 2007
Page 6

attainment.

   *Urgency, Feasibility.* The lack of effective international standards for marine engines poses an enormous challenge for this region in attaining ambient air quality standards. The District is currently in the process of adopting the 2007 Air Quality Management Plan (AQMP). This plan will constitute a portion of the State Implementation Plan required under federal law to demonstrate attainment with the national PM2.5 and 8-hour ozone ambient air quality standards by 2015, and 2023, respectively. The key hurdle we face is that most stationary and mobile sources in this region (other than marine vessels, aircraft and locomotives) are subject to emissions standards requiring over 90% control. Achieving additional reductions from well-controlled sources is relatively difficult. However, analyses shows that this region will need substantial additional reductions to achieve attainment. For example, to attain the federal ozone standard, NOx emissions will likely have to be reduced by approximately 75% over and above the benefits of regulations that are currently in effect and those that have future effective dates. To achieve this level of overall control, relatively uncontrolled sources—notably marine vessels—will have to be controlled by an even greater percentage. In addition, computer modeling for PM2.5 attainment shows that substantial reductions of sulfur oxides—on the order of 55%—will also be needed to meet the PM2.5 standard. Given the relatively low sulfur content of fuels used by onshore sources and the fact that marine vessels are the largest source of SOx emissions, marine vessel SOx emissions will have to be slashed by approximately 90% in the next few years for this area to timely attain the PM2.5 standard.

Such limits are feasible and, in many cases, have been demonstrated. Most notably, Maersk recently announced that it is using 2,000 ppm sulfur fuel in its main and auxiliary engines in waters adjacent to California. Other feasible and cost-effective control technologies are available today which could provide significant NOx reductions from marine vessels, particularly new units. These include SCR, a mature technology which is widely applied to many types of land-based combustion sources and which is capable of achieving at least 90% reduction in NOx emissions from vessels. More than 300 marine engines worldwide are equipped with SCR, including oceangoing vessels in the Pacific (operated by USS POSCO). While we are unaware of an application of SCR to a large container vessel, our technical staff believes that applying this technology in this setting is just a matter of appropriate engineering. Other effective NOx control technologies exist (e.g. humid air technology in conjunction with slide valves).

It should be obvious that the attainment deadlines we face, and the enormous health consequences of marine pollution, establish a clear and urgent need for action. An additional reason for urgent action is the extraordinary large number of oceangoing marine vessels on order for construction. Once these vessels are in the water, they will be in operation for decades. Unfortunately, retrofitting emission controls onto existing

U.S. Environmental Protection Agency
Docket ID No. EPA-HQ-QAR-2007-0120
May 29, 2007
Page 7

vessels is far more technically and economically challenging than building controls into new vessels. The delay of EPA rulemaking will allow many new vessels to be constructed without needed controls, and could well delay advanced controls for decades.

### Conclusion

For the above reasons, it is imperative that EPA act immediately to adopt standards for marine vessels that are sufficiently stringent to enable the Basin and other areas to attain ambient air quality standards and to achieve acceptable levels of health risk from toxics. Such standards should target control of particulate matter, nitrogen oxides and sulfur oxides by at least 90 percent. In addition, EPA should develop means to expedite implementation of such standards in areas with relatively high pollution. No delay in action can be tolerated.

Thank you for the opportunity to comment on this important matter. Please contact Peter Greenwald, Senior Policy Advisor, (909) 396-2111, or Barbara Baird, Principle Deputy District Counsel, (909) 396-2302, if you would like to discuss this matter.

Sincerely,

Barry Wallerstein, D.Env.
Executive Officer

BRW:PG
cc:    The Honorable Barbara Boxer
       The Honorable Dianne Feinstein
       The Honorable Hilda Solis
       The Honorable Lois Capps
       The Honorable Henry Waxman
       The Honorable Jane Harman

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| South Coast Air Quality Management District | STEPHEN L. JOHNSON, Administrator, U.S.EPA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Los Angeles (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___ D.C. ___ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) FELDESMAN TUCKER LEIFER FIDELL LLP 2001 L Street N.W.,,2nd Floor Washington D.C. 20036  202-466-8960 | ATTORNEYS (IF KNOWN) U.S. Department of Justice Washington D.C. |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☒ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. *(If Antitrust, then A governs)* |

### ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| Real Property | Bankruptcy | Forfeiture/Penalty | |
|---|---|---|---|
| ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent, Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 **Prisoner Petitions** ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 610 Agriculture ☐ 620 Other Food &Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 RR & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health ☐ 690 Other | ☐ 470 Racketeer Influenced & Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Satellite TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 900 Appeal of fee determination under equal access to Justice ☐ 950 Constitutionality of State Statutes ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |
| **Personal Property** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | **Property Rights** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark **Federal Tax Suits** ☐ 870 Taxes (US plaintiff or defendant ☐ 871 IRS-Third Party 26 USC 7609 | **Other Statutes** ☐ 400 State Reapportionment ☐ 430 Banks & Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation | |

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ **K.** *Labor/ERISA (non-employment)* | □ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

XXX 1 Original Proceeding □ 2 Removed from State Court □ 3 Remanded from Appellate Court □ 4 Reinstated or Reopened □ 5 Transferred from another district (specify) □ Multi district Litigation □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

1. Federal Clean Air Act, 42 U.S.C. §§7401, et seq.;Administrative Procedure Act, 5 U.S.C. §§701 et seq.
2. Pls seek to compel Defendants to carry out a non-discretionary duty to adopt emission standards for marine vessels

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 □ **DEMAND $** Check YES only if demanded in complaint **JURY DEMAND:** □ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☒ YES □ NO If yes, please complete related case form.

DATE 9/28/07 **SIGNATURE OF ATTORNEY OF RECORD** *Kathy S Shelade*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.